UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TROY L. DOLLENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:13-CV-102 JAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Troy Dollens' ("Dollens") applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*

### I.    Background

On April 13, 2011, Dollens protectively filed applications for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* (Tr. 120-128), and for SSI benefits under Title XVI of the Act, 42 U.S.C. §§1381, *et seq.* (Tr. 129-134) In both applications, Dollens alleged disability beginning January 4, 2008.[1] The Social Security Administration ("SSA") denied Dollens' claims on July 8, 2011. (Tr. 70-74) He filed a timely request for a hearing before an administrative law judge ("ALJ") on July 13, 2011. (Tr. 75-76) Following a hearing held on August 6, 2012 and continued to August 8, 2012 (Tr. 30-66), the ALJ issued a written decision on August 24, 2012, upholding the denial of benefits. (Tr. 7-29) Dollens requested

---

[1] Dollens subsequently amended his alleged onset of disability to June 9, 2010. (Tr. 152)

review of the ALJ's decision by the Appeals Council. (Tr. 6) On September 10, 2013, the Appeals Council denied his request for review. (Tr. 1-6) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Dollens filed this appeal on November 6, 2013. (Doc. 1) The Commissioner filed an Answer. (Doc. No. 11) Dollens filed a Brief in Support of his Complaint. (Doc. No. 25) The Commissioner filed a Brief in Support of the Answer. (Doc. No. 32) Dollens did not file a Reply Brief.

## II. Decision of the ALJ

The ALJ determined that Dollens meets the insured status requirements of the Social Security Act through September 30, 2012,[2] and had not engaged in substantial gainful activity since June 9, 2010, the alleged onset date of disability. (Tr. 2) The ALJ found Dollens had the severe impairments of degenerative disc disease, status post right ankle gunshot, status post left knee arthroscopy, coronary heart disease, chronic obstructive pulmonary disease, attention deficit disorder, schizophrenia, psychotic disorder not otherwise specified, and anxiety disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12-13)

After considering the entire record, the ALJ determined Dollens had the residual functional capacity ("RFC") to perform light work, except for the following nonexertional limitations: can only occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolding; can only frequently balance; can only occasionally stoop, crouch, kneel or crawl; must avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, gases and poor ventilation; limited to being able to understand, remember, and carry out simple

---

[2] To be entitled to disability benefits under Title II of the Act, Dollens must establish the onset of his disability prior to the expiration of his insured status on September 30, 2012. (Tr. 10) See 20 C.F.R. § 404.130.

2

instructions; can generally related appropriately to co-workers and supervisors in small numbers and for short periods of time; can be expected to perform best in a work setting where tasks can be completed relatively independently and where social interaction is not a primary job requirement; can make simple work-related decisions; and has the ability to adapt to routine change in the workplace for most situations. (Tr. 15)

The ALJ found Dollens unable to perform any past relevant work; however, based on his age, education, work experience, and RFC, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Dollens can perform, including small products assembler, electrical assembler, and housekeeper. (Tr. 22-23) Thus, the ALJ concluded that Dollens had not been under a disability from the alleged onset date of June 9, 2010 through the date of his decision, August 24, 2012. (Tr. 24)

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

#### A. Hearing Testimony

The ALJ held a hearing in this matter on August 6, 2012, which was continued due to an unexpected power outage to August 8, 2012. ALJ heard testimony from Dollens and Bonnie Brasher Ward, a vocational expert.

#### 1. Dollens' testimony

Dollens was 52 years old at the time of the hearing and living with his 16-year old son. (Tr. 34) He completed the ninth grade and has no further training or education. (Tr. 35) Dollens has a driver's license. (Tr. 35, 58) Dollens testified he hasn't worked since February of 2007, when he was laid off from a full-time job assembling doors. (Tr. 37-38) He was incarcerated

3

from 2008 to 2011. (Tr. 38) While in prison Dollens was treated for depression, anxiety and schizophrenia as well as emphysema and COPD. (Tr. 39)

It was Dollens' testimony that his ability to work was affected after falling out of a tree while working in 1996. (Id.) He hurt his back and hip; this condition has worsened over the years. (Tr. 43) He has pain every day and rates it between a 3 and 4 on a scale of 1 to 10 with medication. (Tr. 40) He has used a cane for the last year and half when his back and hip are out of place. (Tr. 36) He is treated for his back condition by Steven Taylor, M.D. (Tr. 41) Activity such as housework makes his condition worse. (Id.) Medication helps with no side effects. (Tr. 42) He uses heat and ice twice daily and that also helps. (Tr. 42-43)

Dollens sustained a gunshot to his right ankle in the late 1970's, causing him to walk with a limp. He rates his pain at a 2 or 3 and testified that it has worsened over time. He has not sought any treatment for his ankle pain. (Tr. 40, 43-44)

In 2000 Dollens was diagnosed with COPD and emphysema. He uses three inhalers and an oral medication, which helps with the condition. His breathing is aggravated by heat and allergies. (Tr. 60) According to Dollens this condition has remained the same. (Tr. 44-45)

It was also Dollens' testimony that his mental problems affect his ability to work. He was diagnosed in prison with anxiety, depression and schizophrenia. (Tr. 45) He described hearing voices, even while taking his medication. He cannot be around people or drive in large areas like Columbia. (Tr. 46) His medication helps when taken as directed. (Tr. 47) Dollens sees a therapist monthly and has never been hospitalized. (Id.)

Dollens has had two heart attacks. (Tr. 47-48) He often experiences chest pains two to three times a day, but can go for two to three days at a time with no symptoms. When he experiences chest pains he sits in a chair and tries to relax. (Tr. 59) He has to take two or three

4

nitroglycerin pills before the pain goes away. (Id.) Sometimes he gets a migraine headache from the nitroglycerin. (Tr. 60)

On a typical day, Dollens gets up between 5:30 and 6 in the morning. He tries to watch television but has difficulty understanding the shows. (Tr. 49) He can do a little cooking, but his ex-wife does most of the cooking for himself and their son. (Id.) He does a little housework but needs to stop and rest. (Tr. 54) His son does the yard work. (Id.) His ex-wife does most of the grocery shopping because he has trouble being around people inside the store. (Id.) Dollens experiences claustrophobia. (Tr. 55) He belongs to a church but hasn't attended for the last three months because it is crowded and he gets anxious. (Tr. 56) He spends several hours each day in a recliner. (Tr. 60)

Dollens testified he could sit for twenty to thirty minutes at a time before needing to get up and move around and stretch his legs and back. (Id.) He cannot sit in a hard chair. (Tr. 60) He can sit for five and a half to six hours out of an eight hour period and stand for eight to ten minutes at a time depending on his activity. In an eight-hour period he thought he could stand for an hour and a half. (Tr. 57) He can lift and carry eight to ten pounds. (Id.)

### 2. Testimony of Vocational Expert

The ALJ asked vocational expert, Bonnie Brasher Ward, to assume an individual of the claimant's age, education, and work history with the ability to perform a full range of work at the light exertional level, with the following limitations: can occasionally climb ramps and stairs and never climb ladders, ropes or scaffolding; can frequently balance and occasionally stoop, kneel, crouch and crawl; limited to understanding, remembering and carrying out simple instructions; can generally relate appropriately to coworkers and supervisors in small numbers and for short periods of time; can be expected to perform best in a work setting where tasks can be completed

5

relatively independently and where social interaction is not a primary job requirement; able to make simple work related decisions and ability to adapt to routine changes in the work place in most situations. (Tr. 63) The ALJ further limited the individual in that he would need to avoid concentrated exposure to respiratory irritants. (Id.) Ward opined that such an individual would be able to work as a small products assembler, Dictionary of Occupational Titles (DOT) number 706.684-022, with 175,000 such jobs available nationwide and 520 locally. (Tr. 64) This is light, unskilled work with a specific vocational preparation (SVP) of 2. (Id.) Ward further opined that such an individual would also be able to work as an electrical assembler, DOT number 729.687-010, with 172,000 such jobs nationwide and 4800 locally. (Id.) This is light, unskilled work with an SVP of 2. (Id.) Such an individual would also be able to perform work as a housekeeper, DOT number 323.687-014, with 180,000 such jobs nationwide and 3700 locally, also light and unskilled with an SVP of 2. (Id.)

For the second hypothetical, the ALJ asked Ward to assume the same limitations from the first hypothetical with the following additional limitation: being off task approximately twenty percent of the workday. (Tr. 64) Ward concluded this additional limitation would eliminate work. (Id.) Upon examination by Dollens' counsel, Ward stated that Dollens had no skills transferable to sedentary work (Tr. 64-65)

### B. Medical Records

The ALJ summarized Dollens' medical records at Tr. 16-22. Relevant medical records are discussed as part of the analysis.

### IV. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

6

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has

7

one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the Court considers

evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In his appeal of the Commissioner's decision, Dollens raises two issues. First, he alleges the ALJ improperly evaluated the medical opinion evidence by giving the opinions of his treating physician, Dr. Steven Taylor, little weight. (Doc. No. 25 at 8-10) Second, Dollens challenges the ALJ's credibility determination. (Id. at 10-12)

### Medical opinion evidence

Dollens' primary care physician, Dr. Steven Taylor, completed a Medical Report including Physician's Certification/Disability Evaluation for the Missouri Department of Social Services Family Support Division in May 2011. (Tr. 606-07) In that report, Dr. Taylor listed

9

Dollens' diagnosed conditions including paranoid schizophrenia, chronic obstructive pulmonary disease, ADHD, coronary artery disease, and hypertension. (Id.) He then checked a box indicting that Dollens has a mental and/or physical disability which prevents him from engaging in employment or gainful activity. (Tr. 607) Dr. Taylor also checked a box indicating that in his opinion, the expected duration of Dollens' disability would be six to twelve months. (Id.)

In August 2011, Taylor drafted a letter to the Department of Corrections, stating that Dollens was "no longer able to work due to his chronic pain and his schizophrenia." (Tr. 643)

In July 2012, Dr. Taylor completed a Physician's Assessment for Social Security Disability Claim. (Tr. 771-72) Dr. Taylor listed Dollens' diagnosed conditions and medications and stated that Dollens was "no longer able to work" and had "minimal abilities to cope" with stress. (Tr. 771) Through a series of checked boxes, Dr. Taylor indicated that Dollens could not perform sustained lifting, carrying, standing, walking, or sitting through an 8- hour workday. (Tr. 772) He also noted that Dollens' pain levels would interfere with his ability to maintain attention and concentration for 15 percent of the day. (Tr. 772) Dr. Taylor further noted that Dollens experienced frequent numbness in his extremities. (Id.)

A treating physician's opinion is generally entitled to substantial weight but does not automatically control. Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (quoting Heino v. Astrue, 578 F.3d 873, 880 (8th Cir.2009) (internal quotations and citation omitted). "An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." Id. In addition, treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005); House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007) (A physician's opinion that a claimant is "disabled" or "unable to

10

work" does not carry "any special significance," because it invades the province of the Commissioner to make the ultimate determination of disability). "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." Andrews v. Colvin, 2014 WL 2968815, at *2 (E.D.Mo. July 1, 2014) (quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir.2000)).

The ALJ gave the opinions of Dr. Taylor little weight because they were inconsistent with the objective medical evidence. (Tr. 20). See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). More specifically, the ALJ found Dr. Taylor's opinions "stand alone" with limitations that were not mentioned in his numerous treatment records and not supported by objective testing or reasoning which would indicate why Dollens' functioning need be so restricted. (Tr. 20) In addition, despite Dr. Taylor's significant restrictions, the ALJ found his treatment of Dollens did not reflect an escalation of treatment such as increased frequency or different types of treatment. (Id. at 20-21) Dr. Taylor's treatment notes reflected only prescription medication management, which also did not support his restrictive opinions. (Tr. at 21). "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir.2010). See also Clevenger v. S.S.A., 567 F.3d 971, 975 (8th Cir.2009) (affirming ALJ's decision not to follow opinion of treating physician that was not corroborated by treatment notes). Further, Dr. Taylor's opinions that Dollens "can no longer work," "has a ... disability which prevents him from engaging in employment or gainful activity," or "no longer able to work," are not medical issues regarding the nature and severity of

11

an individual's impairments but rather an administrative finding reserved to the Commissioner. The ALJ noted however that while these types of treating source opinions are never entitled to controlling weight, see, Ellis, 392 F.3d at 994; House, 500 F.3d at 745, he had not ignored Dr. Taylor's opinions on this issue. (Tr. 21)

In contrast, the ALJ gave the opinion of Barbara Markway, Ph.D., the non-examining state agency psychological consultant, significant weight. (Tr. 21) Dr. Markway found Dollens had mild restrictions in activities of daily living, moderate difficulties in social functioning, concentration, persistence or pace, and had experienced no episodes of decompensation. (Tr. 622) Dr. Markway completed a mental RFC assessment of Dollens and concluded he was not significantly limited in the ability to understand and remember short and simple instructions. She determined that Dollens could generally relate appropriately to coworkers and supervisors in small numbers and for short periods of time. He could also be expected to perform best in a work setting where he can complete tasks relatively independently and where social interaction is not a primary job requirement. Dr. Markway concluded that Dollens could make simple work related decisions and that his ability to adapt to routine changes in the workplace was intact for most situations. (Tr. 626-28) The ALJ gave Dr. Markway's opinions significant weight because they were generally consistent with the medical records of evidence as a whole, and particularly with Dollens' mental status examinations and the treatment notes of Agara S. Reddy, M.D. and Marta Fliss, Ph.D. (Tr. 21)

In February 2011, Dr. Reddy found some moderate anxiety, non-disabling paranoia and a mildly dysphoric mood, but noted no indications of abnormalities in orientation, mood, thought content, appearance, thought process, judgment, insight, psychomotor activity, speech, concentration, recall, cognitive function, auditory or visual hallucinations, suicidal ideation, or

homicidal ideation. (Tr. 603-04) Dr. Reddy assigned Dollens a Global Assessment of Functioning (GAF) score of 55-60,[3] which indicates only moderate symptoms or moderate difficulty in social, occupational or school functioning. (Tr. 604) In February and March 2011, Dr. Reddy noted that Dollens' anxiety was related to a number of stressors, including his upcoming release and return home. (Tr. 605) In June 2011, Dr. Reddy noted improvement in Dollens' depression and paranoia. (Tr. 644) In September 2011, Dollens reported that his symptoms of depression, anxiety and paranoia were improving and denied any problems with his medications or hallucinations. Dr. Reddy encouraged all activities. (Tr. 645)

Dollens began monthly therapy treatment sessions at East Central Missouri Behavior Services in October 2011. Dr. Fliss noted no indications of abnormalities in orientation, mood, thought content, appearance, thought process, judgment, insight, psychomotor activity, speech, concentration, recall, cognitive function, auditory or visual hallucinations, suicidal ideation, or homicidal ideation. (Tr. 670-702)

Upon review of the record, the Court concludes that the ALJ properly evaluated Dr. Taylor's opinions, listing "good reasons" for giving them little weight. Prosch, 201 F.3d at 1013. More importantly, the ALJ provided a detailed narrative discussion of how the medical facts and non-medical evidence supported his finding. (Tr. 23-26) The Court finds, therefore, that the ALJ's decision to discount Dr. Taylor's opinion is supported by substantial evidence on the record as a whole.

**Credibility determination**

Dollens argues the ALJ erred in his credibility evaluation and RFC determination by finding that his activities of daily living were inconsistent with his claims of disability. (Doc. No.

---

[3] The GAF scale is a psychological assessment tool that helps summarize a patient's overall ability to function. See Diagnostic and Statistical Manual of Mental Disorders (DSM–IV) (4th ed.2000).

13

25 at 10-12) Deference is given to the ALJ's conclusion with regard to credibility determinations. Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009).

In evaluating a claimant's credibility, the ALJ should consider the claimant's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984). The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. Id. (citing Hall v. Chater, 62 F.3d 220, 223 (8th Cir.1995)). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. Ellis, 392 F.3d at 996.

The ALJ found Dollens' daily activities demonstrated he was more capable than alleged. (Tr. 19) Dollens attended to his own personal care, cared for his son, prepared simple meals, and performed household chores. (Tr. 54, 196-98) He went outside daily, drove, and shopped for groceries once a week for a couple hours. (Tr. 199) His hobbies included watching television, reading "westerns," and playing cards. (Tr. 55, 196, 200, 271, 287) He participated in social activities and had no problems getting along with others. (Tr. 55-56, 200-01) To be sure, there are cases in which a claimant's ability to engage in certain personal activities "does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." Ponder v. Colvin, 770 F.3d 1190, 1196-96 (8th Cir. 2014) (citing Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)).

14

But that is not the case where, as here, Dollens' doctors encouraged him to exercise and he did so regularly. (Tr. 57, 303, 306, 308, 343, 379-81, 383, 385) See Hacker v. Barnhart, 459 F.3d 934, 938 (8th Cir. 2006) (the ALJ did not err when he found that a treating physician's opinion concerning a claimant's "intolerance for even minor physical exertion was inconsistent with his frequent admonition that she should exercise more often.").

Moreover, Dollens' daily activity was just one of several factors the ALJ considered in assessing his credibility and determining his RFC. The ALJ also considered the lack of objective medical evidence to support the degree of limitation alleged. (Tr. 16-19) For instance, the objective medical evidence showed Dollens had a history of mental problems; however, his mental status examinations were consistently unremarkable, with findings of "even" mood, normal speech and motor activity, normal thought processes, and no thoughts of suicide or homicide. The ALJ also noted that Dollens' mental condition was controlled with medication. Because an impairment that can be controlled by treatment or medication is not disabling, the ALJ properly considered this evidence in evaluating Dollens' credibility. See Wildman, 596 F.3d at 965.

With regard to his physical impairments, Dollens' physical examinations and diagnostic testing results did not support his claims of disability. For instance, x-rays of his lower back from June 2011 revealed some mild degenerative changes in his thoracic spine with normal disc spaces, lumbar vertebra height, lumbar lordosis, and intact lumbar vertebral pedicles. (Tr. 630, 664) Two months later, an x-ray of Dollens' lower back was unremarkable. (Tr. 666, 754) The following year, an x-ray showed Dollens had degenerative disc disease with only moderate narrowing at L5-S1 and slight scoliosis.

As for his heart condition and COPD, Dollens' treatment records consistently revealed normal heart rate and rhythm and no respiratory distress. The ALJ noted that Dollens received conservative treatment for his breathing problems, which did not support his claims of disabling limitations. (Tr. 18) See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (ALJ could find that the claimant's conservative treatment was not indicative of disabling symptoms). In addition, Dollens' testimony that he continued to smoke cigarettes despite his claims of disabling breathing problems militates against a finding of disability. See Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir.2006) (concluding that an ALJ may properly consider a claimant's failure to quit smoking); Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000) (same).

Lastly, the ALJ noted that Dollens' lack of treatment for ankle and knee problems undermined his claim. (Tr. 19) See Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (affirming the ALJ's credibility analysis which relied, in part, on the claimant's limited treatment of his symptoms).

In making his credibility assessment, the ALJ also considered Dollens' sporadic work history and poor earnings record, the conservative and routine nature of his treatment, and the effectiveness of his treatment. (Tr. 19-20)

The Court finds the ALJ considered Dollens' subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from his credibility. Because the ALJ's determination not to credit Dollens' subjective complaints is supported by good reasons and substantial evidence, the Court defers to his determination. Cobb v. Colvin, 2014 WL 6845850, at *14 (E.D.Mo. Dec. 3, 2014) (internal citations omitted). See also Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984).

**VI.    Conclusion**

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

Dated this 30th day of March, 2015.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**